## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

JPMORGAN CHASE BANK, N.A.
a national banking association,

      Plaintiff,

v

APPEARANCES INTERNATIONAL, a
Delaware corporation and E2E, Inc., a
Michigan corporation,

      Defendants.

_____/

Case No. _____-CK

Hon. _____

AIMEE R. GIBBS (P70522)
YAFEEZ S. FATABHOY (P83064)
DICKINSON WRIGHT PLLC
350 S. MAIN STREET, SUITE 300
ANN ARBOR, MI 48104
(734) 623-1653
YFATABHOY@DICKINSONWRIGHT.COM
AGIBBS@DICKINSONWRIGHT.COM

*Attorneys for JPMorgan Chase Bank,
N.A.*

_____/

## VERIFIED COMPLAINT

    Plaintiff JPMorgan Chase Bank, NA, a national banking association

("Chase"), by and through its attorneys, Dickinson Wright PLLC, states as follows

for its Verified Complaint against Defendants Appearances International, LLC ("Appearances International") and E2E, Inc. ("E2E") (collectively, "Defendants"):

## SUMMARY OF ACTION

1.      Appearance International is a supplier of home décor, furnishings and accessories, as well as home improvement products, to various online platforms. E2E is an E-commerce company specializing in supply chain logistics.

2.      Defendant Appearances International executed a line of credit note and credit agreement in the amount of $5,800,000 (the "**Loan**") with Chase.

3.      Defendant E2E guaranteed the Loan.

4.      Defendants have defaulted and have not paid under the Loan.

5.      Chase brings this Complaint to recover from the Defendant borrower and guarantor all monies due and owing to the bank.

## PARTIES, JURISDICTION, AND VENUE

6.      Chase is a national banking association with its main office in Columbus, Ohio.

7.      Appearances International is a Delaware corporation conducting business in Michigan.

8.      E2E is a Michigan corporation conducting business in Michigan.

9.     Subject matter jurisdiction is proper in this Court under 28 U.S.C. § 1332 because complete diversity of citizenship exists among the parties and the relief sought far exceeds $75,000 excluding interest and costs.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims, including the intended performance and breach of the parties' contracts, occurred in this District.

11.     The Court has personal jurisdiction over Defendants because Defendants consented in the executed loan and security agreements that any State or Federal Court in Michigan has jurisdiction over Defendants for disputes arising out of the contracts at issue in this litigation.

## **GENERAL ALLEGATIONS**

### *A.     Defendants Execute a Business Line of Credit with Chase*

12.     On December 28, 2021, Chase and Appearances International executed a Credit Agreement, as amended, amended and restated, modified, or continued from time to time, (the "**Credit Agreement**," attached as **Exhibit 1**), pursuant to which Chase extended an original $3,000,000.00 line of credit.

13.     On December 28, 2021, Appearances International executed a Line of Credit Note in favor of Chase in the amount of $3,000,000.00 (the "**LOC Note**," attached as **Exhibit 2**).

14.     E2E executed a Continuing Guaranty dated December 28, 2021 (the "**Guaranty**"), which stated, among other things, "[t]his Guaranty is an absolute guaranty of payment and performance and not collection.   Therefore, the Bank may insist that the Guarantor pay immediately and the Bank is not required to attempt to collect first from the Borrower, the Collateral, or any other person liable for the Liabilities." See **Exhibit 3,** Guaranty, page 3.

15.     The Guaranty for the benefit of Chase is secured by all of E2E's "real or personal property described in all security agreements, pledge agreements, mortgages, deeds of trust, assignments, or other instruments now and hereafter executed."  See **Exhibit 3**, page 2.

16.     To further secure its indebtedness to Chase, Defendants also each entered into a Security Agreement dated December 28, 2021 in favor of Chase. See Security Agreements, collectively attached as **Exhibit 4**.

17.     The Security Agreements grant Chase a security interest in all of Defendants' accounts, deposit accounts, equipment, general intangibles, inventory, investment property, financial assets, stock dividends, cash, and all proceeds thereof (the "**Collateral**").  See **Exhibit 4**.

**B.     *Defendants Increase the Line of Credit with Chase to $5,800,000.00***

18.     On March 1, 2022, Chase and Appearances International executed the First Amendment to Credit Agreement reflecting an increased line of credit amount of $5,800,000.00 (the "**First Amendment,**" attached as **Exhibit 5**).

19.     On March 1, 2022, Appearances International executed a new line of credit note in the same amount to be paid on or before January 31, 2023 (the "**Amended LOC Note**," attached as **Exhibit 6**).

20.     On March 17, 2022, Chase and Appearances International entered into a Second Amendment to Credit Agreement (the "**Second Amendment**," attached as **Exhibit 7**).

21.     The Second Amendment changed the meaning of the term "Borrowing Base" from simply 80% of the book value of all Eligible Accounts (as defined therein) to 80% of the book value of all Eligible Accounts *and* the lower of cost or wholesale market value of all Eligible Inventory (as defined therein). **Exhibit 7**, Section 2.1.   The Second Amendment also added the definition of "Eligible Inventory."  *Id*., Section 2.2.

22.     On April 30, 2023, due to ongoing defaults, the Parties entered into a Forbearance Agreement and Amendment to Credit Agreement and Line of Credit Note (the "**Forbearance Agreement**," attached as **Exhibit 8**).

23.     The Line of Credit Note, Amended LOC Note, Credit Agreement, Guaranty, Security Agreements, First Amendment, Second Amendment, and Forbearance Agreement are referred to collectively as the "**Loan Documents**."

**B.     *Defendants Default on the Terms of the Loan Documents***

24.     Under the Credit Agreement, as amended, the Loan matured and all unpaid principal and accrued interest thereunder became due and payable on January 31, 2023.

25.     Under the Forbearance Agreement, the parties extended the maturity date to December 31, 2023, but required Appearances International to reduce the outstanding principal amount by remitting payments to Chase on a monthly basis on the schedule set forth in Section 1.05 of the Forbearance Agreement, as further defined below.  See **Exhibit 8**, Section 1.05.

26.     Borrower has defaulted under the terms and conditions of the Loan Documents by failing to remit all payments due and owing under the Loan Documents.

27.     Such defaults, each of which qualifies as an "**Event of Default**" under the terms of the Loan Documents, are continuing.

28.     An Event of Default occurred and is continuing under Section 1.05 of the Forbearance Agreement (**Exhibit 8**) as a result of Defendants' failure to remit

the agreed upon monthly principal payments to reduce the outstanding principal balance under the Amended LOC Note (**Exhibit 6**).

29.    Specifically, Defendants defaulted under the Forbearance Agreement (**Exhibit 8**) by failing to remit to Chase:  (a) the $200,000 principal payment due by June 16, 2023; (b) the $200,000 principal payment due by July 1, 2023; (c) the $200,000 principal payment due by August 1, 2023, or (d) the $200,000 principal payment due by September 1, 2023.

30.    An Event of Default occurred and is continuing under the Forbearance Agreement (**Exhibit 8**) because E2E failed to pay the agreed upon monthly principal payments to reduce the outstanding principal balance under the Amended LOC Note (**Exhibit 6**), as well as all unpaid accrued interest, fees, and expenses.

31.    Upon information and belief, an Event of Default has also occurred and is continuing under Sections 5.1B and 7.1B of the Credit Agreement (**Exhibit 1**) as a result of Defendants incurring indebtedness for borrowed money other than: (a) unsecured trade debt incurred in the ordinary course of business, (b) indebtedness owing to Chase, or (c) indebtedness outstanding as of the date of the Credit Agreement (**Exhibit 1**) that had been disclosed to Chase in writing and that was not paid with proceeds of the borrowings under the Credit Facilities.

32.     Upon information and belief, an Event of Default occurred and is continuing under Sections 5.1I and 7.1B of the Credit Agreement as a result of Defendants' sale or transfer of Equity Interest in the Company (**Exhibit 1**).

33.     The Events of Defaults stated in this Complaint are the Events of Default that Chase is presently aware of and are not intended to be an exhaustive list of all Events of Default in existence under the Loan Documents.

**C.     *Chase is Entitled to Acceleration of the Indebtedness Under the Loan***

34.     As a result of each or any Event of Default, pursuant to the Loan Documents, Chase is entitled to undertake the following actions, among other things:

      a. Immediately terminate the Forbearance Agreement under Sections 1.02(a) and 1.02(h) of Forbearance Agreement;

      b. Accelerate and declare immediately due and payable all the indebtedness under the Loan;

      c. Apply all funds, if any, held in Borrower's or Guarantor's accounts at Chase to the outstanding indebtedness;

      d. Exercise, in respect of any collateral it may hold, all rights and remedies of a secured creditor permitted under the law and pursuant to the Continuing Security Agreements and Loan Documents; and

      e. Proceed, by suit in law or equity, to enforce the payment of the indebtedness under the Loan.

35.     Under the terms of the Forbearance Agreement (**Exhibit 8**), in addition to Appearances International's indebtedness for the Loan, Appearances

8

International also consented and agreed "that it is unconditionally liable to Bank for all reasonable fees, costs, expenses, and costs of collection . . . heretofore or hereafter incurred by Bank as provided in the Loan Documents, including, without limitation, all reasonable attorney's fees and expenses incurred in connection with the negotiation and preparation of this Agreement and all documents, instruments, and agreements incidental hereto." **Exhibit 8, Section 1.12**.

36.     Payment of Appearances International's indebtedness to Chase, including the indebtedness evidenced by the Credit Agreement, as amended, and the Amended LOC Note, is guaranteed by E2E's Guaranty.  See **Exhibit 3**.

37.     Pursuant to the Guaranty, E2E "absolutely and unconditionally guarantees to the Bank the performance of and full and prompt payment of the Liabilities when due, whether at stated maturity, by acceleration or otherwise. . ." See **Exhibit 3**, page 1.

38.     The Guaranty also states that E2E "will not only pay the Liabilities, but will also reimburse the Bank for any fees, charges, costs and expenses, including reasonable attorneys' fees (including fees and expenses of counsel for the Bank that are employees of the Bank or its affiliates) and court costs, that the Bank may pay in collecting from the Borrower or Guarantor, and for liquidating any Collateral . . . , both before and after judgment."  See **Exhibit 3**, page 1.

39.     Under the terms of the Security Agreements, Defendants each granted Chase a "continuing security interest in, all of its right, title and interest in the Collateral (as herein[ ] defined), whether now owned or hereafter acquired and whether now existing or hereafter arising." See **Exhibit 4**.

**E.**     ***Chase Sends Formal Notice of Default to Defendants***

40.     On August 30, 2023, counsel for Chase sent a formal Notice of Default and Acceleration of Debt to counsel for Defendants, (the "**Notice of Default**," attached as **Exhibit 9**).

41.     Defendants have not responded or paid the amount due and owing pursuant to the Notice of Default and the Loan Documents.

42.     As of the date of filing of this Complaint, the principal balance due and owing from Defendants to Chase under the Loan Documents is $2,794,922.04.

43.     As of the date of filing of this Complaint, the accrued interest due and owing from Defendants to Chase under the Loan Documents is $137,815.66.

44.     As of the date of filing of this Complaint, other fees and charges due and owing from Defendants to Chase under the Loan Documents, including without limitation, attorneys' fees have been incurred by Chase.

## COUNT I – BREACH OF CONTRACT

45.     Chase incorporates and realleges the allegations above as though fully set forth herein.

46.     Chase and Defendants entered into contractual agreements with each other pursuant to the Loan Documents, as defined herein.

47.     The Loan Documents are valid and binding agreements.

48.     Per the terms of the Loan Documents, as amended, Defendants were required to pay Chase:  (a) $200,000 by June 16, 2023; (b) $200,000 by July 1, 2023; and (c) $200,000 by August 1, 2023.   See **Exhibit 8**, Forbearance Agreement, Section 1.05.

49.     Chase performed all of its obligations under the Loan Documents.

50.     Defendants have failed to make the required payments to Chase.

51.     As Defendants have failed to satisfy its obligations under the Loan Documents, Chase has been harmed, including but not limited to, the principal owed on the Loan Documents, interest accrued, attorney fees and expenses.

52.     As a direct result of the Existing Defaults, Chase has suffered, and will continue to suffer, damages in excess of $2,932,737.70.

WHEREFORE, Plaintiff respectfully requests that this Court establish the debt due and owing under the Loan Documents and enter judgment against Defendants in the amount of $2,932,737.70, plus taxes, late and other charges, and costs and attorney fees, the fees and expenses incurred in this process, and such other relief as the Court deems just.

## COUNT II
## BREACH OF GUARANTY
## (AS TO DEFENDANT E2E INC.)

53.     Chase incorporates and re-alleges the allegations above as though fully set forth herein.

54.     The Guaranty is an agreement separate from the Amended Line of Credit and the Amended LOC Note.

55.     Upon Appearance International's default of its obligations under the Loan Documents, E2E is obligated under the terms of the Guaranty to pay Chase all of the outstanding principal, interest accrued, and fees under the Loan Documents, plus accruing interest as well as all collection costs, which includes reasonable attorney fees.

56.     Pursuant to the Guaranty, "[a]ll obligations of the Guarantor to the Bank under this Guaranty, whether or not then due or absolute or contingent, shall, at the option of the Bank, without notice or demand, become due and payable immediately upon the occurrence of any default or event of default . . .".  See **Exhibit 3**, page 2.

57.     E2E breached the Guaranty by failing to pay Chase the Appearances International Indebtedness.

58.     Chase performed all of its obligations under the Loan Documents.

59.     E2E's breaches of the Guaranty have caused and continue to cause Chase to suffer damages in excess of $2,932,737.70.

WHEREFORE, Plaintiff respectfully requests that this Court establish the debt due and owing under the Loan Documents and enter judgment against E2E in the amount of $2,932,737.70, plus taxes, late and other charges, and costs and attorney fees, the fees and expenses incurred in this process, and such other relief as the Court deems just.

## COUNT III—DECLARATORY JUDGMENT

60.     Chase incorporates and re-alleges the allegations above as though fully set forth herein.

61.     An actual case and controversy between the parties exists.

62.     Chase seeks speedy declaratory relief to establish that Chase is entitled to payment of the outstanding balance as stated under the terms and conditions of the Loan Documents.

63.     Chase respectfully requests that this Court establish the debt due and owing under the Loan Documents and enter judgment against Defendants in the amount of $2,932,737.70, plus taxes, late and other charges, and costs and attorney fees, the fees and expenses incurred in this process, and such other relief as the Court deems just.

64.    In the event the Defendants are able to dispose of any or all of the Collateral, Chase will not be able to recover the payments owed to it by Defendants pursuant to the Loan Documents.

65.    Specifically, declaratory judgment is sought to prohibit the Defendants from engaging in any transaction or dissipation of assets that would prevent Chase from collecting any judgment in this litigation.

66.    The Court's declaratory judgment is critical and necessary to avoid transactions that hide or dispose of assets belonging to or on behalf of the Defendants.

**WHEREFORE**, Chase respectfully requests that the Court enter a judgment against the Defendants in the form of a declaration that the Defendants are liable to Chase under the terms of the Loan Documents in the amount of $2,932,737.70, plus taxes, late and other charges, and costs and attorney fees, the fees and expenses incurred in this process, and such other relief as the Court deems just. Chase further respectfully requests this Court to enter declaratory judgment to enjoin the Defendants from engaging in any transaction or dissipation of the Collateral.

## COUNT IV
## INJUNCTIVE RELIEF

67.    Chase incorporates and re-alleges the allegations above as though fully set forth herein.

68.     Chase is entitled to a preliminary injunction to prevent Defendants from improperly disposing or alienating the Collateral, as defined in the Parties various agreements, over which Chase has a lawful security interest.

69.     No legal remedy is available to compensate Chase if Defendants are not enjoined from improperly disposing or alienating the Collateral.

70.     Defendants are in breach of the terms of the Loan Documents, and as such, are in Default. Thus, Chase's claims in this action, which seek enforcement of the Loan Documents, are likely to succeed on the merits.

71.     Chase will suffer real, substantial, and irreparable harm if injunctive relief is not granted.

WHEREFORE, Chase respectfully requests that this Honorable Court enter a preliminary and permanent injunction in its favor and against Defendants precluding them from improperly disposing or alienating the Collateral, as defined in the Parties various agreements.

## COUNT V
## CLAIM AND DELIVERY

72.     Chase incorporates and re-alleges the allegations above as though fully set forth herein.

73.     The Collateral consists of independent pieces of property or portions of divisible property of uniform kind, quality, and value.

74.     Upon information and belief, Defendants are in possession or control of the Collateral.

75.     Defendants have failed or neglected to surrender possession of the Collateral to Chase.

76.     Under the terms of the Loan Documents, upon Defendants' default, Chase has "the right to take possession of the Collateral with or without demand and with or without process of law, and the right to sell and dispose of it and distribute the proceeds according to law."   See **Exhibit 4**, Continuing Security Agreements.

77.     The total value of the Collateral is in excess of $25,000.00.

WHEREFORE, Chase respectfully requests that this Court enter an Order requiring that:

    a.  Defendants immediately and without delay account for and return possession of the Collateral to Chase;

    b.  Defendants allow Chase and/or its authorized representatives immediate access to its facilities to inspect, inventory, account for, load, remove and transport the Collateral;

    c.  Defendants take all necessary and reasonable steps to preserve and protect the Collateral until such time as the Collateral is safely and in orderly fashion inspected, accounted for, loaded and removed from its facilities; and

    d.  Defendants provide all necessary and reasonable assistance to Chase in its efforts to take possession of the Collateral.

Respectfully submitted,

DICKINSON WRIGHT PLLC


By: /s/ Yafeez s. Fatabhoy
      Aimee R. Gibbs
      Yafeez S. Fatabhoy
      Dickinson Wright PLLC
      350 S. Main Street, Suite 300
      Ann Arbor, MI  48104
      (734) 623-1653
      yfatabhoy@dickinsonwright.com
      agibbs@dickinsonwright.com

## **VERIFICATION**

I declare under penalty of perjury that the factual statements set forth in the foregoing complaint are true and correct to the best of my information, knowledge and belief.

On behalf of Plaintiff JPMorgan Chase Bank N.A.,

By: _____

Printed: William H. Canney

Its: Authorized Officer

4866-9367-7697 v8 [9-641]

18